STATE OF VERMONT

ENVIRONMENTAL COURT

|                                               |     |                        |
|-----------------------------------------------|-----|------------------------|
|                                               | }   |                        |
| In re: Application of Wellspring School, Inc. | }   | Docket No. 47-3-08 Vtec |
| (Appeal of Wellspring School, Inc.)           | }   |                        |
|                                               | }   |                        |

Decision and Order

Appellant-Applicant Wellspring School, Inc. ("Applicant School" or "Applicant") appealed from a decision of the Development Review Board (DRB) of the Town of Chelsea, challenging one condition imposed in the DRB's grant of conditional use approval for a school. Applicant School is represented by Andrea L. Gallitano, Esq. and the Town is represented by Peter M. Nowlan, Esq. The following sixteen individuals entered their appearances as interested parties: Mak Keyes, Nancy Hatch, Richard J. Connor, Sr., Barbara. J. Connor, June K. Leggio, David Leggio, Peter Vermette, Patricia A. Vermette, Carmen LaFromboise, Anthony LaFromboise, Alesia McCoy, Tracy Simon, Michael R. Morgan, Richard L. Wood, Jr., Denise A. Brotherton, and Mark E. LaPlante.

An evidentiary hearing was held in this matter before Merideth Wright, Environmental Judge. The parties were given the opportunity to submit written memoranda and requests for findings. Upon consideration of the evidence and of the written memoranda and requests for findings filed by the parties, the Court finds and concludes as follows.

1

In the present case, Applicant School appealed from one condition in a decision of the DRB of the Town of Chelsea.[1] The decision approved Applicant School's application for conditional use approval of a school on property on Densmore Road, "with condition of direct access off VT Route 113 to school."[2]

The sole question raised in Applicant School's Statement of Questions is whether "the Condition that access to the property be via Route 113 and not Densmore Road [is] appropriate and valid." It is important to note that, unlike in Docket No. 181-8-07 Vtec, neither the Town nor any of the interested parties appealed the grant of conditional use approval.

No issues other than those raised by a party-appellant in this appeal are before the Court. 24 V.S.A. § 4472(d); see In re Simpson Dev. Corp., No. 54-3-05 Vtec, slip op. at 10 (Vt. Envtl. Ct. June 27, 2006) (Durkin, J.) (explaining that even in de novo appeals, this Court is limited to addressing the issues raised in the Statement of Questions (citing

[1] An earlier decision was appealed to this Court as Docket No. 181-8-07 Vtec. The DRB requested and the Court granted remand of that decision pursuant to V.R.E.C.P. 5(i), due to a number of procedural deficiencies.

[2] The DRB's written decision lacks any findings and conclusions as required by 24 V.S.A. § 4464(b)(1). Under that section, the minutes of the meeting are allowed to suffice as the written decision, provided that "the factual bases and conclusions relating to the review standards are provided" in the minutes in conformance with that subsection. Although the vote memorialized in the February 18, 2008 document refers to the minutes of the August 2, 2007, August 9, 2007, and February 4, 2008 hearings, only the February 4, 2008 minutes were provided to the Court in connection with this case. The February 4, 2008 minutes also do not contain any findings or conclusions of the DRB. Rather, they are a recitation of the participants' statements and questions during the hearing. However, in the present case, although the DRB appears to have gone into deliberative session after the public hearing, the DRB's deliberations were also transcribed and appended to the minutes of the public hearing, apparently to serve as the findings and conclusions under 24 V.S.A. § 4464(b)(1).

In re Garen, 174 Vt. 151, 156 (2002))); see also Village of Woodstock v. Bahramian, 160 Vt. 417, 424 (1993).

Therefore, the Court cannot consider any request to deny the application for conditional use approval; all that is before the Court is whether the contested condition should be imposed or vacated, and, if vacated, whether any substitute condition is necessary to achieve the project's compliance with the conditional use standard regarding traffic: § 5.9(c) of the Zoning Bylaw.[3]

The property proposed by Applicant for a school is an approximately 24-acre parcel of land with farm buildings, having the address of 64 Densmore Road. Densmore Road is a Class 3 gravel-surface town road, intersecting with Vermont Route 113. Densmore Road runs in a fairly straight line from that intersection approximately 3,000 feet in a southeasterly direction towards the proposed school driveway.

At the intersection, a wider-than-standard paved apron at the end of Densmore Road allows vehicles exiting Densmore Road to align at a 90° angle with the traveled way of Route 113, before turning onto Route 113, even though Densmore Road makes a more acute angle with Route 113. The sight distance for a vehicle stopped on Densmore Road waiting to exit onto Route 113 is approximately 300 feet, due to the steepness of the hill to the left or west, and due to the curvature of the road to the right or east. The minimum sight distance for a new access at that location would be 440 feet for a 40 mile-per-hour speed limit, and 550 feet for a 50 mile-per-hour speed limit. A reduction in the speed limit along that section of Route 113 would increase the safety of the intersection.

Although its horizontal alignment is fairly straight, Densmore Road has a steep vertical alignment for about the first 800 to 1000 feet from the paved apron, after which it levels off, with a mild upgradient from that point to the site of the school driveway.

---

[3] All references to section numbers are to the 2005 Zoning Bylaw of the Town of Chelsea, unless otherwise noted.

The steep portion of the road is also lined with trees that have grown up since road work was done in the 1950s. The trees shade that section of the road, so that it is late to thaw after the winter, and is prevented from drying out quickly in mud season.

The road width ranges from 18 to 24 feet, and is constructed with a crown in the middle for drainage to the side ditches. During the winter, snow bank accumulations narrow the traveled way. The road has ditches along the majority of both sides of the road, and is maintained by the Town as appropriate for a Class 3 town highway.

Due to the configuration of the steep hill and the paved apron, water running down the steep portion of Densmore Road towards Route 113 carries gravel onto the paved apron. The loose gravel on the paved apron causes unnecessarily slippery conditions, even in dry weather. Water running down Densmore Road is not conducted to a ditch within the paved apron. Rather, it runs out onto Route 113, causing an icing problem on the apron and onto Route 113 in winter conditions, and a resulting safety hazard if vehicles are unable to stop at the intersection when traveling downhill from Densmore Road towards Route 113. To correct this condition, the paved apron should have a low point of at least five inches below the elevation of Route 113, so that water running down Densmore Road does not wash gravel onto the apron and does not wash out onto Route 113, but is instead conducted to the ditch west of Densmore Road and south of Route 113.

Applicant intends to build a two-story frame structure for the school, in the character of a barn, with an approximate 3,000-square-foot footprint and approximately 6,000 square feet of floor area, and with approximately 6,000 square feet of associated parking. Applicant proposes a circular access drive around the two existing barns, to provide access to Densmore Road. If the high ramped entrance now serving the upper floor of one of the existing barns is removed, the proposed access will have more than adequate sight distance both ways on Densmore Road.

4

Applicant School's programs serve students in pre-kindergarten through 8th grade, during a 177-day school year, which includes two snow days. Any additional snow days must be made up with additional school days. Applicant also runs a parent-infant group that meets one morning a week for two seven-week sessions, and hosts three Saturday festival events during the school year. The students are drawn from Chelsea and the surrounding area towns, and are brought to and picked up from the school by parents in the parents' own passenger vehicles. The philosophy of the school encourages carpooling; the school does not operate a school bus. The school has a full-time staff of nine, plus additional part-time staff.

Applicant's goal is to have a student population of approximately 100. In January and February the graded classes meet on Fridays away from the school for a skiing program. The school does not operate during the summer vacation, for a two-week vacation in December, for a week-long vacation in February, and for a week-long vacation in April. The school is closed during snow days observed at the Chelsea public schools. The students participate in sports programs through the Chelsea public schools.

The estimated traffic generated by a school, using the methodology of the Institute of Transportation Engineers, is 2.48 (one-way) trips per student per day. This generation rate includes all traffic generated by the school, including by teachers, staff, parents, and other vehicles making deliveries to the school. The estimated traffic on Densmore Road without the school is approximately 150 to 170 (one-way) trips per day, so that the school at its projected enrollment would add about 248 (one-way) trips per day, for a total usage of the road of about 400 to 420 (one-way) trips per day.

Densmore Road is capable of handling the additional traffic that would be generated by the school, except during two specific weather and road conditions. During mud season (thawing ground conditions) the steep portion of Densmore Road develops deep ruts and is difficult to traverse by standard passenger vehicles. Several

areas contain concentrations of clay (so-called clay boils or clay pots) that are particularly difficult and slippery during thawing conditions. To avoid an undue adverse effect on traffic from the school during thawing ground conditions it may be necessary to close the school during thawing ground conditions, to add more gravel and grade the steep portion of the road more frequently, or to perform further road work or engineering changes to the steep portion of the roadway. In the present proceeding no engineering evidence was presented sufficient to require any specific improvements to the roadway, which may include to cut back the trees to enhance the thawing and drying of the road, to cut back the steep portion of the road to decrease its slope, and/or to install a better drained road material, including the installation of geotextile to maintain the drainage capacity of the gravel road material.

During icing conditions, even if the drainage onto Route 113 is corrected, if the steep portion of Densmore Road is glazed with ice, it is difficult for vehicles traveling down Densmore Road toward Route 113 to stop without sliding out onto Route 113, and it is difficult for passenger vehicles to make it up the Densmore Road hill after turning onto Densmore Road from Route 113. To avoid an undue adverse effect on traffic from the school during icing conditions it may be necessary to close the school during such conditions.

Applicant's property has approximately 1,200 feet of frontage on Densmore Road, with an existing driveway access near the farm buildings, approximately a half mile from the intersection of Densmore Road with Route 113. The back or northerly portion of Applicant's property also has 385 feet of frontage on Vermont Route 113. Access to the roadway of Vermont Route 113 from the property would require construction of a bridge over Jail Brook (also known as Smith Brook), which runs between the back line of Applicant's property and the traveled way of Route 113.

Route 113 is a paved state highway that is considered a major collector road. It is a steep and winding road that runs uphill from Chelsea to Vershire and continues on to

6

Thetford. It carries approximately 870 vehicles per day. In the vicinity of Applicant's frontage it is a steep and somewhat curving road. No point along Applicant's property's frontage on Route 113 has adequate sight distances to locate a new access safely onto Route 113. A new access directly from Applicant's property onto Route 113 would be less safe as it would have shorter sight distances than at the existing intersection of Densmore Road with Route 113.

### Authority to Regulate Schools Regarding Traffic

The current version of 24 V.S.A. § 4413 allows municipalities to regulate schools with respect to traffic. Section 5.17 of the Bylaw, based on an earlier version of the state statute, states that school may only be regulated with respect to a list of criteria not including traffic, "[u]nless provisions [for such regulation] are included in this Bylaw." As schools are a conditional use in the district, and § 5.9(c) of the conditional use standards addresses "[t]raffic on roads and highways in the vicinity," provisions for the regulation of schools with respect to traffic are included in the Bylaw. Section 5.17 therefore does not preclude their regulation.

### Contested Condition

The contested condition requiring "direct access off VT Route 113 to school" is neither appropriate nor valid, for several reasons. First, in the application before the Court Applicant did not propose to install a bridge and access driveway from its property directly onto the property's frontage with Route 113. Because it was not within the scope of the application, it should not have been considered by the DRB. If the DRB determined that Densmore Road could not provide an adequate access for the traffic generated by the school, it could have denied the application on that basis, as not meeting conditional use § 5.9(c), or it could have conditioned approval on the Applicant's coming forward with revised plans providing access to Route 113. Without

7

any specific proposal for a direct Route 113 access to Applicant's property, the DRB had no basis for the contested condition.

In any event, the evidence showed that a new access directly from Applicant's property onto Route 113 also would be less safe than is the existing intersection of Densmore Road with Route 113, and would be contrary to the VTrans policy to require new access points on a town highway rather than a state highway. After the DRB decision, Applicant did apply to VTrans for an access onto Route 113 from Applicant's property, which was denied. See Applicant's Ex. 5.

As reflected in the engineer's report in evidence as Town's Exhibit C, and in the minutes of the DRB's deliberations, a representative of the Town had discussed with the owner of the next property to the northeast and uphill on Route 113 (the so-called Barow property – not labeled as such on the site plan) the possibility of a boundary adjustment to give Applicant more frontage on Route 113 farther uphill from the end of its present frontage. Because Jail Brook runs on the northerly side of Route 113 in this location, such additional frontage would have given Applicant access to Route 113 without the construction of a bridge.

While the appeal of a potential alternate access is understandable, it also was not before the DRB when it was considering the application. Nor is there any evidence that it would have been treated any differently by VTrans than VTrans treated access directly from Applicant's property. In any event, no such easement or boundary adjustment has been entered into by Applicant and that adjacent landowner, so that this alternative Route 113 access from adjacent property is also not before the Court.

Accordingly, the sole issue in the appeal is resolved that the condition that access to the property be via Route 113 and not Densmore Road cannot be upheld and is therefore hereby VACATED.

As is evident from the totality of the minutes of the final DRB meeting and deliberation, see footnote 2 above, the DRB imposed the condition so that the project would meet criterion (c), that is, so that the project as approved would not adversely affect traffic on Densmore Road. Without the contested condition, although the Court does not have before it whether the project should be disapproved, the Court does have before it whether any alternative condition needs to be imposed so that the project will meet § 5.9(c).

With more frequent grading and maintenance, and with improvement to the drainage configuration of the paved apron, the proposed use will not have an undue adverse effect on traffic on Densmore Road, other than in mud season and during conditions when ice is forming on the steep hill portion of Densmore Road. The necessary improvement to the drainage configuration of the paved apron, must result in the paved apron having a low point at least five inches below the elevation of Route 113, so that water running down Densmore Road does not wash gravel onto the apron and does not wash out onto Route 113, but is instead conducted to the ditch west of Densmore Road and south of Route 113. For the proposed use to not have an undue adverse effect on traffic on Densmore Road in mud season and during freezing conditions, as discussed above, it will be necessary either for the school use to close in mud season and when ice is forming on the steep hill portion of Densmore Road, or for additional improvements to the steep hill and shaded portion of Densmore Road to be made to avoid the creation of unsafe conditions during those circumstances.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that the condition requiring access to the property to be from Route 113 is VACATED;

9

the DRB's conditional use approval is HEREBY REMANDED to the DRB for it to impose a condition on its conditional use approval consistent with this decision.

Done at Berlin, Vermont, this 4th day of September, 2009.

_____

Merideth Wright
Environmental Judge